**AMERICAN HOME PRODUCTS CORPORATION, Appellant,**

v.

**IOWA STATE BOARD OF TAX REVIEW, Appellee,**

and

**G. D. Bair, Director of Revenue and Iowa Department of Revenue, Intervenors.**

No. 64837.

Supreme Court of Iowa.

Feb. 18, 1981.

John V. Donnelly and Harold N. Schneebeck, Jr. of Swift, Brown, Winick & Graves, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Gerald A. Kuehn, Asst. Atty. Gen., for appellee and intervenors.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, LARSON, and SCHULTZ, JJ.

SCHULTZ, Justice.

This appeal involves the interpretation of section 422.33, The Code, as it was in effect from January 1, 1971, through June 30, 1975. The question presented is whether the phrase "gross sales from goods delivered within the state" encompasses sales when the seller accepted the orders underlying the sales outside the State of Iowa, filled such orders from a stock of goods maintained outside the State of Iowa, and shipped those goods by common carrier f. o. b. seller's place of business outside the State of Iowa directly to Iowa customers. The district court found that it does. We affirm.

Appellant, American Home Products Corporation (hereinafter American), is a corporate entity incorporated under the laws of the State of Delaware, having its home office in New York, New York, and doing business in the State of Iowa. American reports its income for purposes of income taxation on a calendar-year basis. On March 28, 1977, the Iowa Department of Revenue (hereinafter Department) issued an income tax assessment notice against American in the amount of $1,106,256.96 relating to American's Iowa corporate income tax returns for the years 1968 through 1975. The portion of that assessment which is attributable to the period from January 1, 1971, through June 30, 1975, is at issue in this appeal.

American filed a protest to the assessment, and the dispute was heard on stipulated facts before a hearing officer, who issued a ruling upholding the assessment. Thereafter, American unsuccessfully appealed the ruling to the Iowa State Board of Tax Review and subsequently filed a petition for judicial review in district court. The Polk District Court heard the case on the stipulated facts without further evidence and affirmed the order of the Board of Tax Review.

Section 422.33, The Code imposes a corporate income tax on corporations incorporated under the laws of this state and on foreign corporations doing business in the state. For corporations deriving income from the sale or manufacture of tangible personal property both within and outside the state, the statute subjects to taxation only that income which is reasonably attributable to trade or business within the state. Such income is determined by an apportionment formula contained in section 422.33(1)(b). That provision, as it was in effect from January 1, 1971, through June 30, 1975, provided in pertinent part:

Where income is derived from the manufacture or sale of tangible personal property, the part thereof attributable to business within the state shall be in that proportion which the *gross sales made within the state* bear to the total gross sales.

The *gross sales* of the corporation *within the state shall be taken to be* the *gross sales from goods delivered within the state*, excluding deliveries for transportation out of the state.

(emphasis added).

In its corporate income tax returns for the years at issue, American failed to include as "gross sales made within the state"

certain sales of goods to Iowa customers from business locations outside the State of Iowa. The relevant facts concerning these sales were stipulated before the hearing examiner and are uncontroverted. All orders were sent by Iowa customers to American's business locations outside the State of Iowa and accepted by American outside the state. These orders were filled from a stock of goods maintained outside the state and shipped by common carrier from such locations directly to Iowa customers. The agreements between American and its customers were shipment contracts providing for delivery f. o. b. American's place of business outside the State of Iowa. The contracts provided that American place the goods in the possession of the common carrier with a bill of lading so delivery could be completed. Title to the goods and risk of loss passed to the Iowa customers at the time and place of shipment (outside the State of Iowa).

American's failure to include these transactions as "gross sales made within the state" in its tax returns represents the sole controversy involved in this appeal. In conducting an audit of American's books, which is the basis for the tax deficiency assessment, the Department included as "gross sales made within the state" all sales of tangible personal property whose ultimate destination was an Iowa customer.

■ I. Judicial review of final agency action is governed by the Iowa Administrative Procedure Act, § 17A.19, The Code 1979. There are no constitutional or factual issues present in this appeal; hence, our review is limited to construing the statutory language at issue. In reviewing an administrative agency's interpretation of statutory provisions we may give deference to, but are not bound by, the agency's interpretation. "[T]he meaning of a statute is always a matter of law, and final construction and interpretation of Iowa statutory law is for this court." *Sorg v. Iowa Department of Revenue*, 269 N.W.2d 129, 131 (Iowa 1978).

We must determine whether the controverted sales of goods were "delivered within the state" within the meaning of section 422.33(1)(b), thus designating such sales as "gross sales made within the state" for purposes of the apportionment formula. The parties agree that the statutory term "delivered" is facially ambiguous.

American argues that "delivery" is a commercial concept tied to transfer of title, legal possession, and the passing of risk of loss from seller to buyer. *See* Iowa Uniform Commercial Code, §§ 554.2401, .2504, .2509, The Code 1979. American asserts that under this theory all rights and duties associated with the goods passed to the Iowa customer when the goods were turned over to the common carrier with the bill of lading at American's place of business outside Iowa, and that the transaction was complete at that time; thus, there could be no delivery within the state.

The Department concedes that constructive delivery occurred outside Iowa if the transactions at issue are analyzed under the provisions of the Iowa Uniform Commercial Code in effect at that time. *See* § 554.2319, The Code 1975. The Department contends, however, that the term delivery, which has been in the statute since its inception in 1934, has never hinged on the law of sales or the Uniform Commercial Code but is synonymous with actual physical receipt in Iowa of goods destined for consumption or use in Iowa.

Since the meaning of the term "delivered" is not clear from the statutory language, we must resort to principles of statutory construction to determine the intent of the legislature.

■ II. The purpose of all rules of statutory construction is to ascertain the intent of the enacting legislature. *Iowa National Industrial Loan Co. v. Iowa State Department of Revenue*, 224 N.W.2d 437, 439 (Iowa 1974). Some of the general rules of statutory construction that have been applied by this court are:

(1) In considering legislative enactments we should avoid strained, impractical or absurd results.

(2) Ordinarily, the usual and ordinary meaning is to be given the language used

but the manifest intent of the legislature will prevail over the literal import of the words used.

(3) Where language is clear and plain, there is no room for construction.

(4) We should look to the object to be accomplished and the evils and mischiefs sought to be remedied in reaching a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it.

(5) All parts of the enactment should be considered together and undue importance should not be given to any single or isolated portion.

(6) We give weight to the administrative interpretation of statutes, particularly when they are longstanding.

(7) In construing tax statutes doubt should be resolved in favor of the taxpayer.

*Id.* at 440 (citations omitted). Other rules of construction will be considered later.

■ American asserts that the rule of construction that tax statutes are to be construed against the taxing authority and in favor of the taxpayer overrides any other rule of statutory construction. In support of this position American cites *Scott County Conservation Board v. Briggs*, 229 N.W.2d 126, 127 (Iowa 1975) ("We think the decision is controlled by the general principle that a taxing statute is construed liberally in favor of the taxpayer and strictly against the taxing body."), and *Dodgen Industries, Inc. v. Iowa State Tax Commission*, 160 N.W.2d 289, 296 (Iowa 1968) ("It must appear from the language of the statute the tax assessed against taxpayer was clearly intended."). *See also Estate of Dieleman v. Department of Revenue*, 222 N.W.2d 459, 461 (Iowa 1974); *Knudsen v. Iowa Liquor Control Commission*, 171 N.W.2d 538, 540 (Iowa 1969). We do not believe the case authority cited by American supports its position. In *Iowa National Industrial Loan Co.* we stated:

With one exception none of [the rules of statutory construction] is to be used to the exclusion of the others and all must be applied together in the light of the particular facts of the case then under examination. The single departure from this relates to the polestar of all statutory construction—the search for the true intention of the legislature.

224 N.W.2d at 439; *cf. In re Horse Heaven Irrigation District*, 11 Wash.2d 218, 226, 118 P.2d 972, 976 (1941) (one standard of statutory construction cannot be followed to exclusion of all others when course of such action would lead to illogical result). We therefore conclude that while the rule of strict construction is one factor to be considered, it does not preclude consideration of other principles of construction. All rules of statutory construction that tend to shed light on the intent of the legislature should be utilized in attempting to ascertain the true meaning of a statutory provision.

■ III. When a particular tax statute has not been construed previously, it is necessary to examine both the language used and the purpose for which it was enacted. *Northern Natural Gas Co. v. Forst*, 205 N.W.2d 692, 695 (Iowa 1973). It is generally presumed that statutory words are used in their ordinary and usual sense with the meaning commonly attributed to them. *Sorg v. Iowa Department of Revenue*, 269 N.W.2d 129, 132 (Iowa 1978). Similarly, when a statute does not define a term used, it will be construed according to its accepted usage. *State ex rel. Turner v. Drake*, 242 N.W.2d 707, 709 (Iowa 1976).

Both American and the Department have relied on dictionary definitions to support their respective interpretations of the term "delivered." *Webster's Third New International Dictionary* 597 (unabridged 1966) defines "deliver": "1: to set free from restraint: set at liberty: release or liberate esp. from control . . . . 2: give, transfer: yield possession of control of . . . . 5: to send . . . to an intended destination . . . ." Thus, definitions can be found to support the position of either party and are of little value in attempting to ascertain accepted usage.

The ordinary meaning of the term "delivery" was discussed in *Sunbury Wire Rope Manufacturing Co. v. United States Steel*

*Corp.*, 129 F.Supp. 425 (E.D.Pa.1955), a federal antitrust action in which venue under the Clayton Act depended on whether Detroit Steel Corporation transacted business within the Eastern District of Pennsylvania. In petitioning for rehearing Detroit argued that since the shipments at issue were f. o. b. New Haven, Connecticut, delivery took place there. The district court held to the contrary, however:

> In effect Detroit is urging the Court to view the word *"delivery" as it is used in the law of sales*. However, the term *"delivery" . . . was not used in the* same *technical sense* as it is used in the Uniform Sales Act . . . or in the new Uniform Commercial Code . . . , the provisions of which are addressed to the question of risk of loss as between buyer and seller. *[T]he term "delivery" . . . was used in its "practical, everyday business or commercial concept." From the average businessmen's point of view the shipments* in question *were delivered into the Eastern District* of Pennsylvania and these deliveries constituted the transacting of business in this District.

*Id.* at 427–28 (emphasis added). While we find this authority persuasive, it is nevertheless necessary to examine the purpose for which the statutory provision at issue was enacted.

The legislative history of section 422.33 sheds light upon the objectives of the legislature. In enacting the statute in 1934, the legislature stated: "A tax is hereby imposed . . . upon *every* foreign corporation *doing business* in this state"; "the tax shall be imposed only on the portion of net income *reasonably* attributable to the *trade or business within the state.*" 45th G.A., Extraord.Sess. ch. 82, § 28(a) (1934) (emphasis added); § 422.33, The Code 1975 (emphasis added). This language manifests an intent on the part of the legislature to impose a tax on all foreign corporate activities in Iowa that can reasonably be said to produce income.

From 1934 until 1971 "gross sales made within the state" was defined by section 422.33(1)(b) as "gross sales from goods *sold*

*and delivered* within the state." (emphasis added). In a 1971 amendment the words "sold and" were deleted. 64th G.A., 1st Sess. ch. 165, § 37 (1971). In 1975 the definition of "gross sales made within the state" was again amended:

> The gross sales of the corporation within the state shall be taken to be the gross sales from goods *delivered or shipped to a purchaser* within the state *regardless of the f. o. b. point or other conditions of the sale*, excluding deliveries for transportation out of the state.

66th G.A., 1st Sess. ch. 210 (1975) (emphasis original). The legislature's explanation of the amendment stated:

> The proposed change will clarify, but is not intended to change the meaning of "delivered" sales in the Code, which is equated with destination sales.
>
> The present definition of "delivered" sales is currently being challenged by several taxpayers. If the taxpayers prevail, the Iowa law could be circumvented merely by the buyer and seller agreeing that delivery of the goods will occur outside of Iowa. Such agreements could be easily made without any change in the rights and liabilities of parties to a sales contract.

H.F. 748, 66th G.A., 1st Sess., Explanation (1975).

It is thus clear that the sales at issue would be included in "gross sales made within the state" under the current version of section 422.33(1)(b). American contends the intent of the 1975 legislature cannot be considered in ascertaining the legislative intent underlying the enactment of the 1971 amendment, however. *Anderson v. Hadley*, 245 Iowa 550, 559, 63 N.W.2d 234, 239 (1954), and *In re Guardianship of Susan Wiley*, 239 Iowa 1225, 1231, 34 N.W.2d 593, 596 (1948), are cited for the proposition that the only relevant intent is that of the enacting legislature, not that of a subsequent legislature. The cases cited do not say this. Instead, they state that the court is not *bound* by the construction given a statute by a subsequent legislature, and that the intent of the enacting legislature is controlling.

In *Barnett v. Durant Community School District*, 249 N.W.2d 626, 629 (Iowa 1977), this court stated: "An amendment may indicate an intent either to change the meaning of a statute or to clarify it. Whenever it appears legislation may have been passed simply for the purpose of removing doubt from previous acts, the courts should give effect to that purpose." In the present case the legislature has expressly stated that the purpose of the 1975 amendment was to clarify the meaning of the term "delivered," not to change it. Since we have not found anything that would indicate a contrary intent, we feel compelled to give effect to that purpose. We therefore hold that the term "delivered" was intended to mean delivered to a final destination.

To adopt the construction of the term "delivered" advanced by American would be to reach a strained and impractical result, which would defeat rather than effectuate the purpose of the legislation. It would allow foreign corporations to avoid Iowa income taxation by maintaining a stock of goods outside the state and contracting for shipment f. o. b. shipping point at that location outside Iowa. The purpose of the corporate income tax statute is to equitably raise revenue from those corporations that avail themselves of the privilege of doing business in Iowa. The construction urged by American would cause disparate and inequitable tax treatment between similarly situated corporations transacting business with Iowa customers; it would frustrate the purpose of the statute—to tax "the portion of net income reasonably attributable to the trade or business within the state." § 422.33(1), The Code 1975.

Nowhere do we find any indication that the legislature intended the term "delivered" to be defined as it is in commercial law. The purpose of commercial law is to define the rights of the parties to a commercial transaction. We will not ascribe to the legislature an intent to apply a commercial law term to a tax statute under the rule of strict construction when, as here, there is strong evidence of a contrary intent.

The decision of the district court is

AFFIRMED.