[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
On June 5, 1996, the plaintiff, Trevor Conway, filed a second amended complaint. The second amended complaint names as defendants the city of Hartford (the city), Conway's former employer, and James E. Paradiso (Paradiso), Conway's former supervisor. CT Page 1013
Conway began his employment with the city in December 1984. (Second Amended Complaint, count one, ¶ 7.) At this time, Conway, a transsexual, was a female who went by the name of Tracey A. Conway. (Second Amended Complaint, count one, ¶ 8.) Conway began hormone therapy in May 1990 and completed the gender reassignment process by September 1991. (Second Amended Complaint, count one, ¶ 9.) Conway is now male. (Second Amended Complaint, count one, ¶ 9.) Conway alleges that his work environment became hostile beginning in February 1990. (Second Amended Complaint, count one, ¶ 10.) Conway was terminated on June 9, 1993, effective June 30, 1993, under the alleged pretext of cutting labor expenses. (Second Amended Complaint, count one, ¶ 14.)
Conway alleges that he was denied employment after his termination when he applied for four advertised positions with the city for which he was qualified. (Second Amended Complaint, count one, ¶ 14.) He further alleges that, by January 28, 1994, the other employees who were terminated at the same time as he were all rehired by the city, whereas to date he has been denied employment. (Second Amended Complaint, count one, ¶ 15.)
Counts one and two of the second amended complaint, directed against the city and Paradiso, respectively, allege discriminatory practices in violation of General Statutes §46a-58 (a). Count three, directed against the city, alleges discrimination based on the plaintiff's mental disorder and physical disability in violation of General Statutes § 46a-60
(a)(1). Counts four and five, directed against the city and Paradiso, respectively, allege that the defendants aided and abetted in discriminatory employment practices based on the plaintiff's mental disorder and physical disability in violation of General Statutes § 46a-60 (a)(5). Count six, directed against the city, alleges sexual harassment in the form of the creation of a hostile work environment in violation of General Statutes § 46a-60 (a)(8). Count seven, directed against the city, alleges discrimination on the basis of sexual orientation in violation of General Statutes § 46a-81 (c)(1). Count eight, directed against Paradiso, incorporates by reference the allegations of count seven except the reference to General Statutes § 46a-81 (c)(1). Count eight makes further allegations of "extreme emotional distress, pain and suffering, humiliation, ridicule and scorn." (Second Amended Complaint, count 8, ¶ 22.) CT Page 1014
On July 22, 1996, the city and Paradiso filed a motion to strike counts one through seven of the plaintiff's second amended complaint, accompanied by a supporting memorandum of law. A supplemental memorandum in support of the motion to strike was filed by the defendants on October 9, 1996. The plaintiff filed a memorandum in opposition to the defendants' motion to strike on November 18, 1996.
A motion to strike is the appropriate method to challenge the legal sufficiency of a complaint or any count therein. Gulack v.Gulack, 30 Conn. App. 305, 309, 620 A.2d 181 (1993). A motion to strike admits all facts well pleaded, but rejects consideration of legal conclusions or the truth or accuracy of opinions stated in the pleadings. Novametrix Medical Systems v. BOC Group. Inc.,224 Conn. 210, 215, 618 A.2d 25 (1992). "In judging a motion to strike . . . it is of no moment that the [party] may not be able to prove his allegations at trial." Levine v. Bess Paul SigelHebrew Academy of Greater Hartford, Inc., 39 Conn. Sup. 129, 132,471 A.2d 679 (1983). "The motion [to strike] may also be used to test whether Connecticut is ready to recognize some newly emerging ground of liability." (Citations omitted; internal quotation marks omitted). Castelvetro v. Mills, Superior Court, judicial district of New Haven at New Haven, Docket No. 320396 (February 1, 1994, Gray, J.).
The defendants argue in their motion to strike that the Connecticut Fair Employment Practices Act (CFEPA), General Statutes §§ 46a-60 and 46a-81c, does not prohibit discrimination on the basis of transsexualism. The defendants further contend that the plaintiff's claims for damages based on emotional distress should be barred because they are compensable under the Workers' Compensation Act and thus are preempted by the Act. The defendants' memoranda delve into additional arguments which state the grounds for the motion to strike.
Counts one and two
The plaintiff brings counts one and two under General Statutes § 46a-58 (a), which reads: "It shall be a discriminatory practice in violation of this section for any person to subject, or cause to be subjected, any other person to the deprivation of any rights, privileges or immunities, secured or protected by the constitution or laws of this state or of the United States, on account of religion, national origin, alienage, CT Page 1015 color, race, sex, blindness or physical disability."
In their supplemental supporting memorandum of law, the defendants contend that General Statutes § 46a-58 (a) does not encompass claims for discrimination in employment practices.
"We are persuaded that § 46a-58 does not encompass claims of discriminatory employment practices that fall within the purview of § 46a-60 . . . the specific, narrowly tailored cause of action embodied in § 46a-60 supersedes the general cause of action embodied in § 46a-58 (a)." Commission onHuman Rights Opportunities v. Truelove Maclean. Inc.,238 Conn. 337, 346 (1996).
The plaintiff's factual allegations on which the entire complaint is based (see Second Amended Complaint, ¶¶ 1-16) all stem from alleged discriminatory employment practices. Accordingly, in light of the holding in Commission on HumanRights Opportunities v. Truelove Maclean, Inc., supra,238 Conn. 337, the first and second counts of the plaintiff's second amended complaint must be stricken.
Count three
General Statutes § 46a-60 (a)(1), the basis for count three, reads in relevant part: "For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's . . . present or pasthistory of mental disorder . . . learning disability or physicaldisability, including, but not limited to, blindness. . . ." (emphasis added.) The plaintiff alleges that he was discriminated against on the basis of having both a past mental disorder and a physical disability. The following discussion will address each claim separately, beginning with "physical disability."
Physical Disability
The defendants contend that count three is insufficient because transsexualism, or gender dysphoria, is not a physical disability under the CFEPA. All parties concede that transsexualism is explicitly excluded from coverage as a disability under the federal Rehabilitation Act, 29 U.S.C. § 701
CT Page 1016 et seq., and the Americans with Disabilities Act, 42 U.S.C. § 12101
et seq. The plaintiff argues, however, that, because Connecticut has not explicitly excluded coverage of transsexualism under the CFEPA as the federal statutes have, the Connecticut legislature intended to cover transsexualism as a mental disorder or physical disability under the CFEPA. The plaintiff further asserts that whether gender dysphoria is a disorder or disability is not a question of law to be decided at the present time, but rather an evidentiary matter.
This is a question of first impression in Connecticut. Given the lack of Connecticut authority on this issue regarding transsexualism as a physical disability, this memorandum will look to federal law and cases of other jurisdictions for support.
It is highly persuasive that the Rehabilitation Act of 1973 and the ADA explicitly exclude transsexualism as a physical disability. "Although we are not bound by federal interpretation of Title VII provisions, we have often looked to federal employment discrimination law for guidance in enforcing our own antidiscrimination statute." (Citations omitted; internal quotation marks omitted.) State v. Commission on Human RightsOpportunities, 211 Conn. 464, 469-70, 559 A.2d 1120 (1989).
Two courts in other jurisdictions have also held that transsexualism is not a physical disability. In Sommers v. IowaCivil Rights Commission, 337 N.W.2d 470 (Iowa 1983), the plaintiff, a transsexual, alleged a violation of the Iowa Civil Rights Act that prohibits discrimination against those with a "substantial handicap," either physical or mental, which "substantially limits one or more major life activities." Id., 475. Under this standard, the court held that transsexualism was not a disability, noting that "no claim is made that a transsexual has an abnormal or unhealthy body." Id., 476. InDobre v. National R.R. Passenger Corp. (AMTRAK), 850 F. Sup. 284
(E.D. Pa. 1993), the plaintiff, a transsexual, sought protection under the Pennsylvania Human Rights Act (PHRA), alleging that transsexualism is a physical disability which is protected under the PHRA. Under the Act, "disability" includes those impairments "which substantially limit[s] one or more major life activities." Id., 288. Citing to Sommers v. Iowa Civil Rights Commission,
supra, 337 N.W.2d 470, and the fact that "the plaintiff did not allege in the complaint that she suffers from any organic disorder of the body, " the court held that transsexualism was not a physical disability. Id., 289. CT Page 1017
In Connecticut, the definition of "physical disability" differs from that in either Iowa or Pennsylvania, which were applied in Sommers v. Iowa Civil Rights Commission, supra,337 N.W.2d 470, and Dobre v. National R.R. Passenger Corp. (AMTRAK),
supra, 850 F. Sup. 284. In Connecticut, "[a]n individual is physically disabled if he has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes of or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device." General Statutes §§ 1-1f; 46a-51 (15).
In light of (1) the persuasive authority of federal law Title VII in interpreting Connecticut's antidiscrimination statutes and the express exclusion of coverage of transsexualism in the ADA and the Rehabilitation Act; (2) the persuasive arguments inSommers v. Iowa Civil Rights Commission, supra, 337 N.W.2d 470, and Dobre v. National R.R. Passenger Corp. (AMTRAK), supra,850 F. Sup. 284; and (3) the plaintiff's failure to plead sufficient facts to demonstrate that his condition falls within the Connecticut definition of physical disability, the court believes that the plaintiff's condition as pleaded could not be found to be a physical disability under Connecticut law. Accordingly, count three is stricken to the extent it relies upon a cause of action for discrimination based on physical disability.
Mental Disorder
The defendants argue that gender dysphoria is not a mental disorder under General Statutes § 46a-60 (a)(1). The plaintiff asserts that gender dysphoria is a recognized mental disorder in the DSM-IVR (Diagnostic and Statistical Manual of Mental Disorders).
This is a question of first impression in Connecticut. General Statutes § 46a-60 (a)(1) does not provide a definition of "mental disorder," nor do the definition sections of the General Statutes, namely General Statutes §§ 1-1 et seq. (Provisions of General Application; Construction of Statutes) and 46a-51. The term, "mental disorder," is, however, defined in General Statutes § 17a-540 (Mentally Ill Persons; Patients Rights). General Statutes § 17a-540 reads, "`Persons with a mental illness' means those children and adults who are suffering from one or more mental disorders as defined in the CT Page 1018 most recent edition of the American Psychiatric Association's `Diagnostic and Statistical Manual of Mental Disorders.'" See also Canning v. Lensink, Superior Court, judicial district of New Haven, Docket No. 274308 (February 5, 1993, Reynolds, J.) (citing General Statutes § 17a-540, and stating, "[i]n the definition of `mentally disordered' our statutes incorporate the definition in the most recent editions of the American Psychiatric Association's `Diagnostic and Statistical Manual of Mental Disorders'").
The United States Supreme Court has looked to the DSM in defining a transsexual as "one who has a rare psychiatricdisorder in which a person feels persistently uncomfortable about his or her anatomical sex, and who typically seeks medical treatment, including hormonal therapy and surgery, to bring about a permanent sex change." (Emphasis added; internal quotation marks omitted.) Farmer v. Brennan, 511 U.S. ___, 114 S. Ct 1970,128 L.Ed.2d 811, 820 (1994) (citing American Medical Association, Encyclopedia of Medicine 1006 (1989), American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 74-75 (3d rev. ed. 1987)).
In light of (1) the definition of "mental disorder" in General Statutes § 17a-540 that includes those diagnoses found in the DSM, (2) the United States Supreme Court's use of the DSM definition of a transsexual as one with a "rare psychiatric disorder", and (3) the parties concession in the present case that gender dysphoria is a listed diagnosis in DSM-IVR, the defendant's motion to strike the plaintiff's cause of action for discrimination based on mental disorder is denied. But see Sommers v. Iowa Civil Rights Commission, supra, 337 N.W.2d 476 (holding that gender dysphoria is not a mental disorder because transsexualism does not hinder the performance of "major life activities," and further stating, "[a]n adverse societal attitude does not mean that the transsexual is necessarily perceived as having a physical or mental impairment"); Dobre v.National R.R. Passenger Corp. (AMTRAK), supra, 850 F. Sup. 289
(holding that gender dysphoria is not a mental disorder because transsexualism does not hinder the performance of "major life activities").
Counts four and five
In counts four and five, the plaintiff alleges that the defendants aided and abetted in performing unlawful CT Page 1019 discriminatory practices against the plaintiff, based on the plaintiff's past mental disorder and physical disability; (see Second Amended Complaint, counts four and five, ¶¶ (17-21); in violation of General Statutes § 46a-60 (a)(5).
General Statutes § 46a-60 (a)(5) reads: "For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be adiscriminatory employment practice or to attempt to do so." (Emphasis added.)
The defendants argue that counts four and five must fail because the plaintiff has not sufficiently pleaded facts to support the underlying claim of the unlawful discriminatory practice based on physical disability or mental disorder. The plaintiff merely rebuts that he has sufficiently alleged facts to support this claim for discrimination based on physical disability or mental disorder.
The defendants' motion to strike is denied in light of the above finding that the plaintiff has sufficiently pleaded facts to support a cause of action under General Statutes § 46a-60
(a)(1) for discrimination based upon mental disorder.
Count six
Count six, incorporating by reference paragraphs 17-20 of count three that refer to gender dysphoria as a mental disorder and a physical disability, alleges: "Each and every one of the acts and omissions described herein were done to harass the plaintiff because of his sex, and were undertaken to interfere with the plaintiff's work performance and to create a hostile, intimidating and offensive working environment in violation of General Statutes § 46a-60 (a)(8)." (Second Amended Complaint, count six, ¶ 21.)
General Statutes § 46a-60 (a)(8) reads: "It shall be a discriminatory practice in violation of this section for any employer, by himself or his agent . . . by itself or its agent . . . to harass any employee . . . on the basis of sex. `Sexual harassment' shall, for the purposes of this section, be defined as any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when . . . such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, CT Page 1020 hostile or offensive working environment."
The defendants contend that count six is legally insufficient because the plaintiff alleges discrimination on the basis ofchange of sex rather than sex. The defendants argue that transsexuals are not provided protection under Title VII, which serves as a guide in interpreting Connecticut antidiscrimination law.
This is a case of first impression in Connecticut. Because there is no Connecticut law on this subject, this memorandum will look to federal law in ascertaining the scope of Connecticut law. "Although the language of Title VII of the Civil Rights Act of 1964, § 703(a)(1); 42 U.S.C. § 2000e-2 (a) and that of the Connecticut statute differ slightly, it is clear that the intent of the legislature in adopting 1967 Public Acts, No. 426 (which extended the provisions of the Fair Employment Practice Act . . . to prohibit discrimination on the basis of sex) was to make the Connecticut statute coextensive with the federal. Although we are not bound by federal interpretation of Title VII provisions, we have often looked to federal employment discrimination law for guidance in enforcing our own antidiscrimination statute. Nevertheless, we have also recognized that, under certain circumstances, federal law defines the beginning and not the end of our approach to the subject." (Citations omitted; internal quotation marks omitted.) State v.Commission on Human Rights Opportunities, supra,211 Conn. 469-70.
Federal courts have held that transsexuals are not covered by the protections afforded by Title VII or similar state statutes. See Underwood v. Archer Management Services. Inc., 857 F. Sup. 96
(D.D.C. 1994) (dismissing the plaintiff's claims alleging violation of the D.C. Human Rights Act); Dobre v. National R.R.Passenger Corp. (AMTRAK), supra, 850 F. Sup. 284, 288 (dismissing the claim under the Pennsylvania Human Rights Act, stating that "Title VII cases unanimously hold that Title VII does not extend to transsexuals nor to those undergoing sexual conversion surgery"); Ulane v. Eastern Airlines. Inc., 742 F.2d 1081, 1085
(7th Cir. 1984), cert. denied, 471 U.S. 1017 (1985) ("the words of Title VII do not outlaw discrimination against a person who has a sexual identity disorder, i.e. . . . a person born with a female body who believes herself to be a male; a prohibition against discrimination based on an individual's sex is not synonymous with a prohibition against discrimination based on an CT Page 1021 individual's sexual identity disorder or discontent with the sex into which they were born . . . Had the Congress intended more, surely the legislative history would have at least mentioned its intended broad coverage of homosexuals, transvestites or transsexuals . . ."); Sommers v. Iowa Civil Rights Commission,
supra, 337 N.W.2d 476 (looking to federal interpretation of Title VII in holding that transsexuals are not afforded protection under the Iowa law that prohibits against discrimination based on sex); Holloway v. Arthur Andersen Co., 566 F.2d 659 (9th Cir. 1977) (refusing to expand coverage of Title VII to include transsexuals); Powell v. Read's, Inc., 436 F. Sup. 369 (D. Md. 1977) (same); Voyles v. Ralph K. Davies Medical Center,403 F. Sup. 456, 457 (N.D. Calif. 1975) (same). But see Maffei v.Kolaeton Industry, Inc., 626 N.Y.S.2d 391 (Sup. 1995) (holding that a city ordinance prohibiting "gender" discrimination provides protection to transsexuals, disagreeing with the reasoning behind the federal cases which hold that Title VII does not protect transsexuals because Title VII does not prohibit discrimination based on sexual orientation, and noting that there is a difference between homosexuals and transsexuals[1]);Holloway v. Arthur Andersen Co., supra, 566 F.2d 664-65 (Goodwin, J., dissenting) (stating, "I fail to see any valid Title VII purpose to be served by holding that a discharge while an employee is in surgery, or a few days before surgery, is not as much a discharge by reason of sex as a discharge a few days after surgery . . . It seems to me irrelevant under Title VII whether the plaintiff was born female or was born ambiguous and chose to become female . . .").
Given the weight of outside authority holding that Title VII and similar state statutes do not prohibit discrimination against transsexuals and the absence of any Connecticut legislative intent to cover discrimination against transsexuals, it is the court's opinion that General Statutes § 46a-60 (a)(8) does not prohibit discrimination against transsexuals. Accordingly, the defendants' motion to strike count six of the plaintiff's second amended complaint is granted.
Count seven
Count seven alleges a violation of General Statutes §46a-81c(1) for discrimination based on sexual orientation. Sexual orientation is defined as "having a preference for heterosexuality, homosexuality or bisexuality, having a history of such preference or being identified with such CT Page 1022 preference. . . ." General Statutes § 46a-81a.
The defendants argue that the plaintiff has failed to state his orientation or allege any facts to support this claim for discrimination based on sexual orientation. Lastly, the defendants argue that the plaintiff has actually alleged discrimination based on being a transsexual, not based on his sexual orientation.
The plaintiff asserts that he sufficiently pleaded facts to support a claim for discrimination based on sexual orientation. In count seven, paragraph 12(a), the plaintiff alleges, "Respondent Paradiso and the city of Hartford continually subjected the plaintiff to verbal ridicule because of the plaintiff's transsexualism and/or sexual orientation."
"In judging a motion to strike . . . it is of no moment that the [party] may not be able to prove his allegations at trial."Levine v. Bess Paul Sigel Hebrew Academy of Greater Hartford,Inc., 39 Conn. Sup. 129, 132, 471 A.2d 679 (1983). Accordingly, the court finds that the plaintiff has pleaded sufficient facts to support a claim under General Statutes § 46a-81c(1) for discrimination based on sexual orientation.[2] and the court holds that because "sexual orientation" is defined broadly to encompass all types of sexual preference, the plaintiff need not name his sexual orientation in the complaint. Therefore the defendants' motion to strike count seven is denied.
Count eight
In count eight, directed against Paradiso, the plaintiff incorporates the allegations of count seven, except for the statutory reference to General Statutes § 46a-81c(1), and adds a claim for "extreme emotional distress, pain and suffering, humiliation, ridicule and scorn." (Second Amended Complaint, count eight, ¶¶ 21-22.)
The defendants argue that this count is barred by the Workers' Compensation Act. The plaintiff asserts that intentional acts are not covered by the Workers' Compensation Act, and therefore the plaintiff's cause of action is not preempted by the Act.
Intentional acts do not fall within coverage of the Workers' Compensation Act, and thus are not preempted by the Act. "We CT Page 1023 consistently have interpreted the exclusivity provision of the act, General Statutes § 31-284 (a), as a total bar to common law actions brought by employees against employers for job related injuries with one narrow exception that exists when the employer has committed an intentional tort or where the employer has engaged in wilful or serious misconduct." Suarez v. DickmontPlastics Corp., 229 Conn. 99, 106, 639 A.2d 507 (1994). For the act to be intentional, the consequences of the act must have been intended, or the risk of injury must be foreseeable to a substantial certainty. Id., 108-09.[3] "Intent is clearly a question of fact that is ordinarily inferred from one's conduct or acts under the circumstances of the particular cases." Id., 111.
"In judging a motion to strike . . . it is of no moment that the [party] may not be able to prove his allegations at trial."Levine v. Bess Paul Sigel Hebrew Academy of Greater Hartford.Inc., supra, 39 Conn. Sup. 129. Accordingly, because intent is a question of fact to be decided by the jury, the court finds that the plaintiff's claim for emotional distress is not preempted by the Workers' Compensation Act and thus will not be stricken.
The defendant's motion to strike is granted as to counts one, two, three (as to the cause of action for discrimination based on physical disability) and six, and denied as to counts three (as to the cause of action for discrimination based on mental disorder), four, five, seven and eight.
Robert J. Hale, J.