IOWA FEDERATION OF LABOR, AFL-CIO, Phyllis Trobaugh, and Livingston Moyston, Appellees,

v.

IOWA DEPARTMENT OF JOB SERVICE, n/k/a Department of Employment Services, Division of Job Service, Appellant.

No. 87-1093.

Supreme Court of Iowa.

July 20, 1988.

Walter F. Maley, Des Moines, for appellant.

Dennis McElwain of Smith & Smith, Sioux City, Lois Cox and William Hoekstra, Iowa City, and Mark L. Hill, Iowa City, for appellees.

LAVORATO, Justice.

In this judicial review proceeding we must decide whether the word "report" in a Job Service rule means the same as "pay." The district court concluded it does not and we agree. We affirm but remand for further rule-making proceedings.

I. *Background Facts and Proceedings.*

In 1984 the respondent, the Iowa Department of Job Service, amended its rule set out at 345 Iowa Administrative Code 4.2(1)(e),[1] purportedly to authorize the payment of unemployment compensation benefits on a biweekly rather than weekly basis. *See* Iowa Code § 17A.4 (1983). The petitioners include the Iowa Federation of Labor, AFL–CIO, whose membership includes persons currently receiving such benefits, and two current recipients, Phyllis Trobaugh and Livingston Moyston.

The petitioners filed a petition for judicial review in the district court, challenging the validity of the rule on two grounds. *See id.* at § 17A.19. First, they allege the rule requires a claimant for unemployment benefits to "report" on a biweekly basis; the rule, however, says nothing about payment on a biweekly basis. Thus, they conclude the department's interpretation of the rule —that the word "report" includes "payment"—is unreasonable. Second, they allege the rule was not properly promulgated because sufficient notice of the change was not given to the public.

Following a hearing the district court denied the petitioner's request for a temporary injunction to prevent application of the rule. Thereafter, the parties agreed that the district court should decide the merits of the judicial review petition based on the record made at the hearing on the temporary injunction.

1. On September 24, 1986, Job Service rules were moved from tab number 370 of the Iowa Administrative Code to tab number 345; we refer to the latter here.

The district court concluded that the department's interpretation of the word "report" in the rule was unreasonable. The court also concluded that the department had indeed failed to substantially comply with the rule-making provisions of chapter 17A when the rule was promulgated. It is from this ruling that the department appeals.

On appeal, the department challenges the jurisdiction of the district court to review the department's rule. It contends a recent amendment to the Iowa Constitution precludes such review. The department also challenges the district court's ruling regarding the department's interpretation of the rule and regarding the procedure followed in promulgating the rule.

## II. *Scope of Review.*

 When reviewing a district court decision on the validity of agency action, our task is to determine whether the district court has correctly applied the law. *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 908 (Iowa 1987). In doing so, we apply the standards of Iowa Code section 17A.19(8) to the agency action to determine whether our conclusions are the same as those of the district court. *Id.* If our conclusions are the same, we must affirm; if not, we reverse. *Downing v. Iowa Dep't of Transp.*, 415 N.W.2d 625, 627 (Iowa 1987).

## III. *Preclusion of Judicial Review.*

At the outset the department challenges the district court's jurisdiction to consider the validity of its rule 4.2(1)(e), which it claims changes the payment of benefits from a weekly to a biweekly basis. The department argues that judicial review of administrative rules is now precluded because of a recently adopted amendment to the Iowa Constitution. That amendment, which went into effect in 1984, provides: "The general assembly may nullify an adopted administrative rule of a state agency by the passage of a resolution by a majority of all of the members of each house of the general assembly." Iowa Const. art. III, § 40.

The department construes the amendment to be a transfer of agency rule review power from the judiciary to the legislature, thereby depriving the courts of jurisdiction to review agency rules. Any attempt to exercise such jurisdiction, the department argues, would be a violation of the separation-of-powers provision found in article III, section 1 of the Iowa Constitution.[2]

We think the department reads more into the amendment than its words suggest.

 Generally, constitutional provisions are subject to the same rules of construction as statutes. 16 Am.Jur.2d *Constitutional Law* § 90, at 416–17 (1979). Our ultimate goal in interpreting statutes is to ascertain and give effect to the legislature's intent. *Ayers v. Straight*, 422 N.W.2d 643, 645 (Iowa 1988). To achieve that goal, we look to the object to be accomplished—the mischief to be remedied or the purpose to be served—and construe the statute so that it will best effect rather than defeat the legislative purpose. *Id.* Our statutory construction analysis should thus begin with the state of the law at the time the statute was passed. *Id.* We apply these same rules of construction to article III, section 40 of the Iowa Constitution.

**2.** Article III, § 1 of the Iowa Constitution provides:

The powers of the government of Iowa shall be divided into three separate departments—the legislative, the executive, and the judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted.

The separation-of-powers concept embodied in article III, § 1 deals with the distribution of governmental functions among the three branches of government. One branch of government is constitutionally prohibited from exercising another's power because all three branches derive their authority from the same source: the Iowa Constitution. Thus, each branch represents the state in equal degree and each is supreme, independent, and exclusive within its own sphere. *State v. Ronek*, 176 N.W.2d 153, 155 (Iowa 1970).

Before the constitutional amendment was adopted, the passage of a statute was necessary to overcome an administrative rule. *See* Iowa Code § 17A.8(8)(1983); Bonfield, *The Iowa Administrative Procedure Act*, 60 Iowa L.Rev. 731, 904 (1975). In 1967, an Iowa Attorney General's opinion concluded that a proposed statutory amendment, allowing the legislature to change administrative rules by joint or concurrent resolution, violated the Iowa Constitution. 1968 Report Iowa Att'y Gen. 79–80 (May 10, 1967). The opinion cites two reasons:

> First, the original rule making power comes from a law duly enacted. Assuming the rule is within the delegation and not an improper exercise of the legislative function, it merges with and becomes an integral part of the statute under which it was promulgated. The rule thereby attains the force and effect of law. If a legislature can change an administrative rule by resolution, which is not a law, it would have the power to effectively repeal any statute which delegates rule making powers, without a law of equal standing ... and without the governor's approval or veto. This would be contrary to the provisions of Article III, §§ 1, 16 and 17 of the Constitution of the State of Iowa respecting the legislature.
>
> Secondly, administration of law, including exercise of the rule making power, is the proper function of the *executive*, rather than the legislative, branch of our government. Review of administrative rules is, except as heretofore stated, a function of the judicial branch of our government. No one branch of our government may encroach upon the functions of either of the other two except as authorized by our constitution. If the legislature changes administrative rules by joint or concurrent resolution, without the governor's approval or veto, it will, in my opinion, violate Article III, § 1, Constitution of the State of Iowa, respecting distribution of powers.

*Id.* (citations omitted). One author suggests this opinion probably triggered the chapter 17A requirement that a statute is necessary to overcome an agency rule. Bonfield, 60 Iowa L.Rev. at 904.

The next logical step would be to obviate this requirement, thereby removing the constitutional cloud. Article III, section 40 obviously accomplishes this purpose. We conclude these motives, rather than the motive to preclude judicial review, prompted adoption of the constitutional amendment.

Our conclusion avoids what would otherwise be an apparent conflict between the court's power to interpret and declare laws invalid under article V of the Iowa Constitution and the legislature's supposed exclusive power to nullify administrative rules under article III, section 40. *Cf. Schwarzkopf v. Sac County Bd. of Supervisors*, 341 N.W.2d 1, 5–6 (Iowa 1983) (separation-of-powers principle is violated if legislature usurps power granted by constitution to the courts). Our duty in light of such a conflict is clear. If fairly possible, we must harmonize constitutional provisions. *In re Johnson*, 257 N.W.2d 47, 50 (Iowa 1977). The manner in which we have construed the constitutional amendment does just that.

In addition, our construction of article III, section 40 is in harmony with the modern day view of the governor's, legislature's, and judiciary's oversight responsibility with respect to agency rules.

For example, the 1981 Model State Administrative Procedure Act (MSAPA) provides for gubernatorial, legislative, and judicial review of agency rules. *See* A.E. Bonfield, *State Administrative Rule Making* §§ 8.4, 9.3, at 550–52, 586–88 (1986). The provisions for gubernatorial and legislative review in the Act have been described as "creat[ing] a complete and fully integrated scheme calculated to ensure, much more effectively than existing schemes, that the rule-making process of the many state agencies is lawful, fully responsive to the popular will, and adequately coordinated to avoid conflict and inconsistency." *Id.* at § 8.4, at 550. The judicial review provisions of the Act are seen as

provid[ing] an accessible, easy to invoke, and effective means with which to check illegal agency rule making. In doing so, these provisions of the Act also appear to preserve the proper relationship between the courts, the agencies, and the legislature, to ensure the performance of essential judicial functions prescribed by the various state constitutions, and to provide a neutral forum for the final resolution of questions relating to the legality of agency rules.

*Id.* at § 9.3, at 587.

Our own statutory scheme relative to gubernatorial, legislative, and judicial review of agency rules tracks closely with that of the MSAPA. Both allow the governor to rescind an agency rule. *Compare* Iowa Code § 17A.4(6) *with* MSAPA § 3–202(a). Both place the burden of proof regarding a rule's validity on the agency if the legislature's administrative rules review committee files an objection to the rule. *Compare* Iowa Code § 17A.4(4)(a) *with* MSAPA § 3–204(d)(5). And both make all final agency action subject to judicial review. *Compare* Iowa Code § 17A.19 *with* MSAPA § 5–102(a).

The importance of judicial review of agency rules in this tripartite scheme was recently acknowledged:

[A] reliable scheme for judicial review of agency rules is essential because the combination of agency rule-making procedures and gubernatorial and legislative review of rules cannot alone assure the legality of all agency rules. Consequently, an additional check is needed to secure this result. One of the principal roles of the courts in our tripartite form of government is to protect individuals against illegal government action that impinges on their rights. In addition, state constitutions authorize courts to determine finally most questions of law. Therefore, an effective scheme for judicial review of agency rules is also necessary for the accomplishment of these purposes. Remember, also, that the courts normally have no personal or institutional stake in the legality of particular agency rules. That tends to make them

a more neutral, detached, and reliable check on illegal agency rule making than the governor or legislature.

Bonfield, *State Administrative Rule Making* § 9.1, at 555.

Given this importance of the judiciary's oversight of agency rules, we doubt that article III, section 40 was intended to eliminate one of the three important checks over an agency's power to legislate. *See Anderson v. Iowa Dep't of Human Servs.*, 368 N.W.2d 104, 108 (Iowa 1985) ("Validly adopted rules have the force and effect of law."); B. Schwartz, *Administrative Law* § 4.7, at 160 (2d ed. 1984) (agency rule has same force and effect as a statute). Such an intent, we believe, would have been expressly stated in the amendment. Absent express language in article III, section 40 precluding judicial review, we do not infer it. *Cf. Barlow v. Collins*, 397 U.S. 159, 165–67, 90 S.Ct. 832, 837–38, 25 L.Ed.2d 192, 199–200 (1970) ("preclusion of judicial review of administrative action adjudicating private rights is not lightly to be inferred").

The department's suggested interpretation could raise not only a potential conflict between state constitutional provisions pertaining to judicial and legislative powers, as we previously said, but could also raise serious due process questions. Due process may require judicial review of the validity of agency rules in cases against particular individuals. *See* Schwartz, *Administrative Law* § 8.5, at 444–48. *But see Rybinski v. State Employees' Retirement Comm'n*, 173 Conn. 462, 472, 378 A.2d 547, 553 (1977) (because "there is ordinarily no constitutional right to judicial review of administrative action," court lacks such jurisdiction if no statutory authorization). *See generally* Hart, *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic*, 66 Harv.L.Rev. 1362 (1953) (suggesting that due process does require some judicial review).

After the constitution was amended, the legislature did not take steps to repeal Iowa Code sections 17A.19 and 17A.4(6), provisions relating to the court's and gov-

ernor's authority to review agency rules.[3] At that time the legislature did not even claim exclusive authority to review agency rules; had it done so, it surely would have expressly repealed these provisions. This is especially true in light of the strong presumption against the repeal of statutes by implication. *See State v. Rauhauser*, 272 N.W.2d 432, 434–35 (Iowa 1978).

For all of these reasons, we are convinced article III, section 40 does not preclude judicial review of agency rules. The district court exercised proper jurisdiction in considering the validity of the department's administrative rule.

IV. *The District Court's Interpretation That "Report" Cannot Reasonably Mean "Payment."*

■ Next we turn to the merits of the appeal. Central to the issue we must resolve is the meaning of the phrase "an individual shall report ... biweekly" in the department's rule 4.2(1)(e).

The rule as amended on March 6, 1985, now reads:

> In order to maintain continuing eligibility for benefits during any continuous period of unemployment, an individual shall report weekly *or biweekly* or as otherwise required, by mail or in person at the time directed to do so by an authorized representative of the [department] at the office where the claimant last registered for work and filed a claim for benefits.

345 Iowa Admin. Code 4.2(1)(e) (emphasis added). The amendment added the italicized words. The department interpreted the phrase "an individual shall report ... biweekly" as authorizing it to change its payment of benefits from a weekly basis, as it had done in the past, to a biweekly basis. The district court. disagreed, concluding that the "biweekly reporting rule cannot be reasonably stretched to be interpreted as a biweekly payment rule."

The department makes a number of assertions to support its contention that the district court erred. Those assertions, however, have one central theme: the district court failed to give due deference to the department's interpretation of its own rule. In support of its due deference assertion, the department relies heavily on *Gray v. Powell*, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301 (1941).

Simply stated, *Gray v. Powell* stands for the principle "that when administration of a statute has been confided to a regulatory agency and a statutory term is reasonably capable of the interpretation the agency has given, a court will sustain this even though it might have reached a different conclusion." *S.E.C. v. Talley Indus., Inc.*, 399 F.2d 396, 403 (2d Cir.1968), *cert. denied*, 393 U.S. 1015, 89 S.Ct. 615, 21 L.Ed. 2d 560 (1969). This principle is actually a limitation on the scope of judicial review of agency rule interpretation. It treats the agency's interpretation as a finding of fact —"reviewable ... only to determine whether it is reasonable in the circumstances of the case." B. Schwartz, *Administrative Law* § 232, at 650 (1976).

The department argues the principle laid down in *Gray v. Powell* has particular application to its interpretation of rule 4.2(1)(e). It points to Iowa Code section 96.6(1), which delegates to the department authority to promulgate regulations with respect to benefit payments.[4] It also points out that the district court had no statutory terms to interpret but only the terms adopted by the department in the rule. Under these circumstances, the department argues, the court should have accepted the department's interpretation of its own words.

Preliminarily, we note that *Gray v. Powell* was decided before passage of the Federal Administrative Procedure Act and the Iowa Administrative Procedure Act. In addition, many federal courts do not follow the case. *See* B. Schwartz, *Administrative Law* § 234, at 653–54 (1976).

---

**3.** We mention the governor's authority because the department's exclusivity argument necessarily implies that the constitutional amendment denies not only the court, but also the governor, the authority to review administrative rules.

**4.** Section 96.6(1) provides: "Claims for benefits shall be made in accordance with such regulations as the department may prescribe."

More importantly, the principle laid down in *Gray v. Powell* does not mesh with our own scope of administrative rule review, and we reject it. Although interpretation and final construction of a rule is a law issue for the court to decide, we do give agencies "a reasonable range of informed discretion in the interpretation and application of their own administrative rules." *Wiese v. Iowa Dep't of Job Serv.*, 389 N.W. 2d 676, 679 (Iowa 1986); *Meads v. Iowa Dep't of Social Servs.*, 366 N.W.2d 555, 558 (Iowa 1985); *Dameron v. Neumann Bros., Inc.*, 339 N.W.2d 160, 162 (Iowa 1983); *accord Frank v. Iowa Dep't of Transp.*, 386 N.W.2d 86, 88 (Iowa 1986). We are not, however, bound by an agency's interpretation, especially when its interpretation is unreasonable and clearly erroneous. *Iowa Ass'n of School Bds. v. Iowa PERB*, 400 N.W.2d 571, 575 (Iowa 1987); *Meads*, 366 N.W.2d at 558. Thus, our task is to decide whether the district court correctly determined that the department's interpretation of its rule was not reasonable.

We apply the familiar rules of statutory construction to the rule in question. *Messina v. Iowa Dep't of Job Serv.*, 341 N.W.2d 52, 56 (Iowa 1983). The construction we finally give to the rule should be fair and sensible in light of the department's intent. *See Iowa Ass'n of School Bds.*, 400 N.W.2d at 574. We generally presume that statutory words are used in their ordinary and usual sense with the meaning commonly attributed to them. *American Home Prods. v. Iowa State Bd. of Tax Rev.*, 302 N.W.2d 140, 143 (Iowa 1981). Moreover, when a statute does not define a term, we construe it according to its accepted usage. *Id.* Finally, in interpreting statutes we avoid "strained, impractical or absurd results." *Franklin Mfg. Co. v. Iowa Civil Rights Comm'n*, 270 N.W.2d 829, 831 (Iowa 1978).

We narrow our focus to the key words of the rule: "an individual *shall report* ... biweekly." The word "report" is not defined in chapter 96 nor in rule 4.2(1)(e).

"Pay" means "to discharge one's obligation ... [or] to compensate," whereas "report" means "to make one's presence, arrival, or readiness for service ... known to the proper authority by presenting oneself" or "to give a formal or official account or statement." *Webster's New International Dictionary* 1796, 2113 (2d ed. 1956). Applying common usage to these two words, we conclude they are not synonymous. Attempting to make them so, as the department argues, would be just as illogical as saying black is white. Clearly, the department's interpretation, as the district court concluded, is unreasonable.

## V. *Failure to Substantially Comply With Statutory Rule–Making Provision.*

The unreasonableness of the department's interpretation becomes readily apparent when viewed in the light of the manner in which the rule was promulgated.

As we previously noted, Iowa Code section 96.3(1) provides that Job Service benefits "shall be paid ... in accordance with such regulations as the department of job service may prescribe." Section 96.11(1) requires Job Service rules to be adopted in accordance with chapter 17A.

Section 17A.4 provides that no rule is valid unless adopted in substantial compliance with the following requirements: (1) notice of the agency's intended action must be published at least thirty-five days before its implementation; (2) interested persons must have an opportunity to comment during a period of at least twenty days; (3) if properly requested, the agency must provide opportunity for oral presentations to be held no sooner than twenty days after notice; (4) the notice and comment provisions are inapplicable if the agency for good cause finds that they are unnecessary, impracticable, or contrary to the public interest. These requirements further two important purposes of the Iowa Administrative Procedure Act (IAPA): to increase the opportunities for the public to have a say in the formulation of policy affecting them, and to increase the public accountability of agencies. *See* Bonfield, 60 Iowa L.Rev. at 848–51; *see also* Bonfield, *State Administrative Rule Making* § 6.4.1, at 180–87.

For twenty-six years the department followed a policy of paying benefits on a weekly basis. That policy was set forth in instructions to the department's employees and to recipients. The policy constituted a rule and became valid when not challenged within two years of the enactment of the IAPA on July 1, 1975. *See* Iowa Code § 17A.4(3).

In 1984 the department decided to pay benefits every two weeks rather than every week in order to reduce administrative costs. It attempted to change its twenty-six-year-old policy, which had been statutorily converted into a rule, by changing its reporting rule, 4.2(1)(e). The department, however, failed to clearly inform the public in its notice of intended action that by amending rule 4.2(1)(e), it was switching payment from a weekly to a biweekly basis. Thus, interested parties like the petitioners were denied any meaningful opportunity to participate in the rule-making process. *See Iowa Citizen/Labor Energy Coalition, Inc. v. Iowa State Commerce Comm'n*, 335 N.W.2d 178, 181 (Iowa 1983) (pursuant to Iowa Code section 17A.4(1)(a) notice must be sufficiently informative to assure interested parties an opportunity to participate intelligently in rule-making process); *cf. Rodway v. United States Dep't of Agric.*, 514 F.2d 809, 814 (D.C.Cir.1975) (notice encompassing rules for administration of food stamp program did not give sufficient notice of change in amount of coupons to be allotted to recipients).

For these reasons we agree with the petitioners and the district court that the department failed to substantially comply with the rule-making procedures of Iowa Code section 17A.4. In short, we conclude that Job Service rule 4.2(1)(e) does not validly authorize the department to switch payment of benefits from a weekly to a biweekly basis.

V. *Disposition.*

Testimony from department witnesses indicated that payments were being made on a biweekly basis and that a switch back to a weekly payment schedule might entail a delay of several months in payment of benefits. In their brief to the district court the petitioners acknowledged the critical importance of the prompt payment of unemployment compensation benefits. They suggested that the court allow biweekly payments until a new regulation could be validly promulgated, citing *Rodway* as precedent for such relief. *See Rodway*, 514 F.2d at 817 (vacation of invalid U.S. Department of Agriculture rule on food stamps not ordered pending rule-making proceedings in compliance with Federal Administrative Procedure Act).

The district court, apparently sharing the petitioners' concern, gave the department the option of adopting a rule that would validly authorize biweekly payments or reverting to weekly payments "in an orderly process that will be least disruptive."

We likewise share the petitioners' and the district court's concern. Testimony from a department witness indicated that promulgation of a new rule would take between two and six months. Accordingly, we allow the present rule as interpreted by the department to remain in effect for a period of six months from the date of this opinion, to give the department a reasonable period of time to promulgate a new rule. We therefore remand this case to the district court, which must then return the case to the department for rule-making proceedings in compliance with the IAPA.

AFFIRMED AND REMANDED.