**Edward J. HOLLINRAKE, Appellant,**

v.

**IOWA LAW ENFORCEMENT ACADEMY, MONROE COUNTY, Iowa, and Jack Baker, In His Official Capacity as Monroe County, Sheriff, Appellees.**

**No. 89–798.**

Supreme Court of Iowa.

March 21, 1990.

John A. Pabst of Clements, Blomgren, Pothoven, Pabst & Stravers, Albia, for appellant.

Thomas J. Miller, Atty. Gen., Gary L. Hayward, Asst. Atty. Gen., and Annette J. Scieszinski, County Atty., for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and NEUMAN, JJ.

LARSON, Justice.

Edward J. Hollinrake, who was denied certification as a peace officer by the Iowa

Law Enforcement Academy (academy) because his eyesight did not meet its minimum standards, sought judicial review in district court. The district court dismissed his petition, and he appealed. We affirm.

This is the second appeal in this case. In the first, *Hollinrake v. Monroe County*, 433 N.W.2d 696 (Iowa 1988), we held that Hollinrake could not pursue a civil rights action under Iowa Code chapter 601A (1987) but was limited to the judicial review provisions of chapter 17A. *Hollinrake*, 433 N.W.2d at 699.

The pertinent facts are set out in the first *Hollinrake* case, 433 N.W.2d at 697, and we need not repeat them in detail here. Essentially, the record shows that Hollinrake's distance vision in his left eye does not meet the standards of 501 Iowa Administrative Code 2.1(9), which requires uncorrected vision of "not less than 20/100 in both eyes, corrected to 20/20." The academy determined that Hollinrake did not meet the vision criteria of the rule and therefore could not be certified. In making this determination, the academy interpreted rule 2.1(9) to require 20/20 corrected vision in each eye.

We address five issues: (1) whether facts alleged in his petition for judicial review must be deemed admitted for purposes of the motion to dismiss; (2) whether the academy erroneously interpreted its rule regarding eyesight requirements; (3) whether the academy acted "illegally" in denying Hollinrake's certification without a hearing; (4) whether the academy's action was unreasonable, arbitrary, or capricious; and (5) whether the academy's eyesight rule violates Iowa Code chapter 601A, our civil rights statute. A sixth issue, regarding the scope of the record in the event of a remand, need not be addressed because we do not remand the case.

## I. *Must the Allegations of the Petition be Deemed to be True?*

The general rule is that a motion to dismiss admits all "well-pleaded" facts in the petition, and the allegations of the petition are construed in the light most favorable to the pleader. *Stafford v. Valley Community School Dist.*, 298 N.W.2d 307, 308 (Iowa 1980); *Curtis v. Board of Supervisors*, 270 N.W.2d 447, 448 (Iowa 1978). Hollinrake argues that, for purposes of the judicial review proceeding, the following facts set out in his petition must be presumed to be true:

1. Hollinrake's vision in his left eye is 20/100 corrected to 20/80.
2. Hollinrake's vision in his right eye is 20/30 corrected to 20/20.
3. Hollinrake's corrected vision using both eyes is 20/20.
4. Hollinrake is fully qualified and competent to perform the duties of a deputy sheriff of Monroe County, Iowa.
5. Hollinrake's vision does not affect his ability to serve as a deputy sheriff.
6. Hollinrake successfully completed the training at the Iowa Law Enforcement academy.
7. In a civil rights case, a jury found Hollinrake able to adequately and competently perform his job as a deputy sheriff.
8. The academy has certified persons with vision the same or similar to Hollinrake as peace officers.
9. The rules of the academy define Hollinrake as being disabled under the Iowa Civil Rights Act.

The academy agrees that allegations 1, 2, 3, and 6 are established, but it contends that the remaining five allegations have either not been properly raised, or are irrelevant, or both.

Under our view of this case, even if we accept Hollinrake's argument on this procedural matter, it would make no difference in the outcome. This is so because allegations 1, 2, and 3, which concern Hollinrake's corrected vision, and allegation 6, that Hollinrake had completed his training at the academy, are conceded by the academy. Even if we assume the truth of the remaining allegations, 4, 5, 7, 8, and 9, which raise Hollinrake's claims that the academy's action was unreasonable, arbitrary, or capricious and in violation of our civil rights statute, it would make no difference in this case, because for reasons dis-

cussed below, we reject those arguments on their merits.

## II. *Construction of 501 Iowa Administrative Code 2.1.*

The rule which caused Hollinrake's rejection, 501 Iowa Administrative Code 2.1, provides in relevant part:

> In no case shall any person hereafter be selected or appointed as a law enforcement officer unless the person:
>
> . . . .
>
> 2.1(9) Has an uncorrected vision of not less than 20/100 in both eyes, corrected to 20/20
>
> . . . .

Hollinrake's distance vision in his left eye is 20/100 corrected to 20/80. The vision in his right is 20/30 corrected to 20/20. Using both eyes, his corrected vision is 20/20. Hollinrake contends his uncorrected vision is 20/100 or better in both eyes, and that it is corrected to 20/20 when he is using both eyes. Hollinrake argues that the academy's interpretation that each eye must be corrected to 20/20 is erroneous.

■ We give an agency a reasonable range of discretion in the interpretation and application of its own administrative rules. *Meads v. Iowa Dep't of Social Servs.*, 366 N.W.2d 555, 558 (Iowa 1985). However, we are not bound by its determination. It is ultimately the duty of the court to determine matters of law including the interpretation of a statute or agency rule interpreting a statute. *Cosper v. Iowa Dep't of Job Serv.*, 321 N.W.2d 6, 10 (Iowa 1982). We will not defer to an agency interpretation that is plainly inconsistent with its rule or plainly erroneous. *Sommers v. Iowa Civil Rights Comm'n*, 337 N.W.2d 470, 475 (Iowa 1983). The rules for construction of administrative rules are nearly identical to those for construction of statutes. *Iowa Fed. of Labor v. Iowa Dep't of Job Serv.*, 427 N.W.2d 443, 449 (Iowa 1988); *Messina v. Iowa Dep't of Job Serv.*, 341 N.W.2d 52, 56 (Iowa 1981). One difference is that it is the intent of the agency in promulgating a rule which provides the basis of construction. *Iowa Fed. of Labor*, 427 N.W.2d at 449; *American*

*Home Prods. v. Iowa State Bd. of Tax Review*, 302 N.W.2d 140, 143 (Iowa 1981).

■ Iowa Code section 80B.11(4) provides in relevant part:

> The director of the academy, subject to the approval of the council, shall promulgate rules in accordance with the provisions of this chapter and chapter 17A, giving due consideration to varying factors and special requirements of law enforcement agencies relative to the following:
>
> . . . .
>
> 4. Minimum standards of physical, educational and moral fitness which shall govern the recruitment, selection and appointment of law enforcement officers.

While we will not defer to an agency's interpretation that is plainly inconsistent with its rule or plainly erroneous, Hollinrake has made no effort to show that the academy's interpretation is either plainly inconsistent with the rule or that it is plainly erroneous. The rule is clearly subject to two interpretations, and the academy's interpretation is just as reasonable as Hollinrake's. The academy's interpretation, that the rule requires corrected vision of 20/20 in each eye, is clearly plausible.

The academy reasons that the word "corrected" in the rule relates to the word "uncorrected" in the first sentence of the rule. Therefore, the words "in both eyes" refer to both corrected and uncorrected. Moreover, 20/20 vision in each eye is a rational requirement because of a need for proper depth perception and reserve vision in the event of injury to one eye in the performance of the officer's duty. We conclude that the academy's interpretation of the rule should be sustained.

## III. *The Right to a Hearing.*

■ Hollinrake's certification was denied without a hearing, and he contends this was error. As he points out, Iowa Code section 17A.18(1) provides that, when the granting of a license is required, by the constitution or a statute, to be preceded by notice and an opportunity for an evidentiary hearing, the provisions of chapter 17A

regarding contested cases apply. This would ordinarily involve a hearing. Iowa Code chapter 80B, the Law Enforcement academy statute, does not provide for advance notice and hearing except in the case of a *revocation* of an officer's certification. *See* Iowa Code § 80B.13(9). The question thus becomes whether some other statute, or our constitution, requires a hearing in such a case. Under Iowa Code section 17A.2(2), a hearing is required if the action involves the determination of disputed facts of particular applicability under the circumstances, commonly referred to as "adjudicative facts." *See Polk County v. Iowa State Appeal Bd.*, 330 N.W.2d 267, 277 (Iowa 1983).

In this case, there are no disputed adjudicative facts. The only evidence on which the academy denied Hollinrake's certification, the results of his eye examination, was presented by Hollinrake himself. Certification was denied on the ground that Hollinrake lacked the minimum visual acuity required by the rules.

If a certification decision turns on circumstances peculiar to the applicant, an evidentiary hearing may be required under the constitution. *See* B. Schwartz, *Administrative Law* § 84, at 238–39 (1976). Thus, Hollinrake should be afforded a hearing if, for example, the denial of his license was premised on misconduct or character defects or if he disagreed with the factual basis for the decision. *Id.* In the instant case, Hollinrake had no such claims. The sole deficiency in his application related to a "generalized legislative fact"—a standardized vision requirement. *See* Bonfield, *The Definition of Formal Agency Adjudication Under the Iowa Administrative Procedure Act*, 63 Iowa L.Rev. 285, 323 (1977) [hereinafter Bonfield, *Formal Agency Adjudication*].

When a decision is based solely on legislative facts, due process does not require a hearing:

> In general, procedural due process demands that whenever a state agency determines the legal rights, privileges, or duties of a specific party based upon that party's particular facts and circumstances, the state agency is bound to provide an opportunity for an evidentiary hearing. Stated differently, a state must *usually* provide an individual with an opportunity for a hearing of some sort when it takes action of *particular applicability*, defining a person's rights, on the basis of adjudicative facts. As noted earlier, adjudicative facts are individualized facts concerning the circumstances of the specific party—the facts of the particular case. "Adjudicative facts are the facts about the parties and their activities, businesses, and properties.... [T]hey usually answer the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are the kind of facts that go to a jury in a jury case." ... "Legislative facts do not relate to particular parties; they are generalized facts which apply more broadly and may, as Justice Holmes once phrased it, serve as a ground for laying down a rule of law."

Bonfield, *Formal Agency Adjudication*, at 323. *See Allegre v. Iowa State Bd. of Regents*, 349 N.W.2d 112, 115 (Iowa 1984).

The rationale for this rule is explained:

> The whole function of the required *evidentiary* hearing is ... to find adjudicatory facts in the best way available—through the mechanism of an oral adversary hearing. When there are *no* relevant adjudicative facts in dispute, therefore, there is no more need for a hearing as a matter of due process than there is as a matter of statutory requirement. Obviously, neither the Constitution nor a statute should be read to require a wholly useless act.
>
> ....
>
> A hearing is not required by constitution in an agency adjudication when there is no material issue of fact that is disputed by the parties.

Bonfield, *Formal Agency Adjudication*, at 330.

Under the circumstances of this case, Hollinrake was not entitled to a hearing on either constitutional or statutory grounds.

IV. *The Unreasonable, Arbitrary, and Capricious Argument.*

■ Hollinrake contends that, while Iowa Code section 80B.11(4) gives the academy the authority to set minimum standards of physical fitness, that authority was administered in an unreasonable, arbitrary, or capricious manner. Others in similar situations, he argues, have been certified. He contends he is fully qualified to perform his duties, and it was arbitrary and capricious to deny him the certification. His argument under this division is quite similar to his argument under division III, that he was entitled to a hearing.

He also contends an agency must provide for a hearing so that a waiver can be granted to a person fully qualified to perform a job. He argues that the failure of the rules to provide for a waiver is unreasonable, arbitrary, capricious, and illegal, but he cites no authority for this proposition.

If it is held that a rule which does not provide a procedure for waiver is illegal, then this would require a case-by-case adjudication of every agency decision, which would undercut the very purpose of rulemaking. Reliance on rules, rather than on individualized determinations, is not unreasonable, arbitrary, or capricious. In fact, it is a well-accepted alternative to such individualized cases. In *Heckler v. Campbell,* 461 U.S. 458, 467, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66, 74 (1983), the Supreme Court stated that:

> It is true that the statutory scheme contemplates that disability hearings will be individualized determinations based on evidence adduced at a hearing. But this does not bar the Secretary [of Health and Human Services] from relying on rulemaking to resolve certain classes of issues. The Court has recognized that even where an agency's enabling statute expressly requires it to hold a hearing, the agency may rely on its rulemaking authority to determine issues that do not require case-by-case consideration. A contrary holding would require the agency continually to relitigate issues that

may be established fairly and efficiently in a single rulemaking proceeding.

(Citations omitted.)

The Court noted the general principle of due process that, when an agency takes official or administrative notice of facts, a litigant must be given an adequate opportunity to respond. It then noted:

> This principle is inapplicable, however, when the agency has promulgated valid regulations. Its purpose is to provide a procedural safeguard: to ensure the accuracy of the facts of which an agency takes notice. But when the accuracy of those facts already has been tested fairly during rulemaking, the rulemaking proceeding itself provides sufficient procedural protection.

*Id.* at 470, 103 S.Ct. at 1959, 76 L.Ed.2d at 76 (citations omitted).

Under the facts of this case, no individualized determination need be made with respect to the minimum vision standards adopted by the academy. Hollinrake contends, however, that others have been certified without compliance with the vision requirements of the academy. Even if so, the fact that other officers might have been certified in violation of the agency rule does not provide a sound basis for certifying this applicant in view of the fact that he did not meet the requirements of the rule. Hollinrake gave no details as to who these unknown persons might be or how many there might be.

V. *Relationship Between Academy Rule and Civil Rights Statute, Iowa Code ch. 601A.*

■ Hollinrake contends that our civil rights act, Iowa Code ch. 601A, is violated by the academy's rule in question. He argues that, under Iowa Code section 601A.6(1), it is unlawful to discriminate against a disabled person if he is qualified.

The academy responds first that Hollinrake is not "disabled" for purposes of the civil rights statute and that, in any event, this statute does not apply here because certification procedures do not fall within the employment-type activities proscribed

by the act such as hiring, firing, and promoting.

Iowa Code section 601A.6(1)(a) (1989) provides in relevant part:

It shall be unfair or discriminatory practice for any:

*a.* Person to refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, or to otherwise discriminate in employment against any applicant for employment or any employee because of the ... disability of such applicant or employee, unless based upon the nature of the occupation.

"Disability," for the purpose of this prohibition, is defined as "the physical ... condition of a person which constitutes a substantial handicap...." Iowa Code § 601A.2(11). Further meaning is given to this definition in the following administrative rules:

8.26(1) The term "substantially handicapped person" shall mean any person who has a physical or mental impairment which *substantially limits* one or more major life activities, has a record of such an impairment....

8.26(2) The term "physical or mental impairment" means:

*a.* Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genito-urinary; hemic and lymphatic; skin; and endocrine; or

. . . .

8.26(3) The term "major life activities" means functions such as caring for one's self, performing manual task, walking, *seeing*, hearing, speaking, breathing, learning, and working.

161 Iowa Admin.Code 8.26(1)–(3) (1988) (emphasis added).

These provisions were construed in *Probasco v. Iowa Civil Rights Comm'n*, 420 N.W.2d 432, 436 (Iowa 1988), in which we said that

[t]he degree to which an impairment substantially limits an individual's employment potential must be determined with reference to a number of factors: the number and type of jobs from which the impaired individual is disqualified, the geographical area to which the individual has reasonable access, and the individual's job training, experience and expectations. An impairment that interferes with an individual's ability to do a particular job but does not significantly decrease that individual's ability to obtain satisfactory employment otherwise is not substantially limiting within our statute.

(Citations omitted.)

In the present case, it is clear that Hollinrake does not fit into a category that can be defined as "disabled." He is not disqualified from a wide range of other available jobs. He would only be limited from jobs that require stringent visual acuity. Hollinrake is not limited to any geographical area, nor is his reasonable access hindered in any manner. In fact, while Hollinrake is limited in this particular job because of his vision, he is not limited in any significant way from obtaining other satisfactory employment. Disability discrimination legislation

assures that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps. It would debase this high purpose if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared. Indeed, the very concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in his or her search for satisfactory employment.

*Probasco*, 420 N.W.2d at 436 (quoting *Forrisi v. Bower*, 794 F.2d 931, 934 (4th Cir. 1986)). We do not believe the action of the academy in this case violated the terms of chapter 601A.

We find no error and therefore affirm. AFFIRMED.