Richard D. MILLER, Appellee,

v.

SIOUX GATEWAY FIRE DEPARTMENT, Division of Department of Defense Military Division, State of Iowa, and James W. Hathaway, Appellants.

No. 91–1516.

Supreme Court of Iowa.

March 24, 1993.

Bonnie J. Campbell, Atty. Gen., and Scott M. Galenbeck, Asst. Atty. Gen., for appellants.

Harry H. Smith and MacDonald Smith of Smith & Smith, Sioux City, for appellee.

SCHULTZ, Justice.

This appeal presents issues arising from a claim of employment discrimination on the basis of an employee's disability in violation of Iowa Code section 601A.6(1)(a). Plaintiff, Richard Miller (Miller), brought an action [1] against the Sioux Gateway Fire Department (Department), alleging that he was wrongfully discharged from his position as an airport firefighter because he has diabetes. The case was tried to the district court in equity.[2] The court awarded Miller judgment, reinstatement, damages and costs. The Department appeals from the district court's decision. In our de novo review, we find that the nature of Miller's employment exempts the Department from liability and reverse the district court's decision.

The Department is operated by the Iowa Air National Guard and employs both National Guard and civilian firefighters. The Department's firefighting services are utilized by all civilian and military aircraft at the Sioux City Gateway Airport.

Since the age of five, Miller has had diabetes mellitus, a disorder of the endocrine system. This condition requires Miller to regulate his blood sugar levels. A diabetic whose blood sugar levels drop too low may experience weariness, dehydration, hunger, sweating, nervousness, and confu-

---

1. Miller originally filed a complaint with the Iowa Civil Rights Commission but secured a release from the Commission pursuant to Iowa Code section 601A.16, allowing him to bring an action in the district court.

2. Previously, we have held that chapter 601A actions "do not fall within the ambit of section 611.4 which allows the prosecution of an equitable proceeding 'where courts of equity, before adoption of this Code had jurisdiction.' Rather, such claims fall within the definition of an ordinary action." *Smith v. ADM Feed Corp.,* 456 N.W.2d 378, 384 (Iowa 1990). Among its claims, this action requested injunctive relief. This case was tried in district court as an equitable action; therefore, our review is de novo. *Frank v. American Systems Inc.,* 398 N.W.2d 797, 799 (Iowa 1987).

sion. In his interview with the Department, Miller stated that he was in good health. The Department hired Miller in October 1987.

Miller's probationary period formally started November 10, 1987. On December 11, 1987, Miller received a Letter of Clarification of Expectations from his supervisor, Dave Hutton, informing him that he was expected to report to work "100 percent alert," and citing three dates on which he had reported to work extremely tired. However, the letter stated that it was not a discipline action.

On April 28, 1988, Miller had an insulin reaction at work; he became confused and weak, and was sent home. This was when the Department first learned of Miller's diabetes. Upon learning of Miller's condition, Fire Chief Hathaway required Miller to provide his physician with a job description and obtain medical approval before returning to work. Miller obtained a medical approval from Dr. Cunningham, whom he had seen after the insulin reaction on April 28, and delivered it to Hathaway. Chief Hathaway phoned Dr. Cunningham in order to express some of his concerns and received further assurances from Dr. Cunningham that Miller was able to perform the duties of his position.

Miller returned to work on May 6, 1988, and received a second Letter of Clarification of Expectations from the Department. The letter referred to his insulin reaction and stated that Miller's probationary period would be indefinitely extended. A few days later, the Department learned that extending a probationary period was not possible.

On May 24, 1988, Miller was called into Hathaway's office. Hathaway and Hutton were both present and gave Miller a Letter of Discharge. The letter cited the following reasons for discharge: inefficiency, less than competent job performance, failure to perform assigned duties in a reasonable amount of time, and inadequacy in performance of assigned duties.

At trial, Miller asserted that he was physically qualified to perform all duties. Miller argued that he was discharged because of the Department's perception that his diabetes barred him from the occupation and that the reasons given for his discharge were merely a pretext. The Department argued that Miller failed to demonstrate he was disabled; therefore, he was not entitled to the benefits of Iowa Code chapter 601A. The Department also argued that Miller did not meet a bona fide occupational qualification for the position of a firefighter. The district court found that Miller was regarded by the Department as having an impairment, diabetes, and this was the reason for his discharge. The court entered a decree awarding judgment to Miller granting him reinstatement to his position, $35,600 in damages for past wages, and costs. The matter of attorney fees was deferred until after appeal.

On appeal, the Department claims (1) Miller is not a disabled person under Iowa Code section 601A.6; (2) the Department established a bona fide occupational qualification as a defense; and (3) the relief of reinstatement is inappropriate because the Department cannot reasonably accommodate Miller.

■ This action and the defenses against it arise from Iowa Code section 601A.6 which provides in pertinent part:

1. It shall be an unfair or discriminatory practice for any:

a. Person to refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, or otherwise discriminate in employment against any applicant for employment or any employee because of the age, race, creed, color, sex, national origin, religion or *disability of such applicant* or employee unless based on the nature of the occupation. . . .

(Emphasis added.) A prima facie case of discrimination can be shown by establishing: (1) that the employee belongs to a protected group; (2) that the employee was qualified to retain the job; (3) the employee was terminated; and (4) it is more likely than not that the termination was based on an impermissible consideration. *Hamer v.*

*Iowa Civil Rights Comm'n,* 472 N.W.2d 259, 264 (Iowa 1991).

■ The threshold inquiry is whether Miller can show he is a disabled person subject to the protection of Iowa Code section 601A.6. *Henkel Corp. v. Iowa Civil Rights Comm'n,* 471 N.W.2d 806, 809 (Iowa 1991). In *Probasco v. Iowa Civil Rights Comm'n,* 420 N.W.2d 432, 434 (Iowa 1988), this court explained that a handicapped individual shall mean "any person who has a physical or mental impairment which substantially limits one or more of such person's major life activities, has a record of such impairment, or is regarded as having such impairment."

Miller testified at trial that he is not limited in any major life activities; therefore, the Department argues Miller is not a disabled person. 161 Iowa Admin.Code 8.26(1)–(3) (1987). The trial court found that Miller was a member of a protected group, handicapped individuals, because the Department regarded him as having an impairment.

We believe the evidence showed an actual impairment. Some courts have decided that an insulin dependent diabetic is clearly a handicapped person. *Bentivegna v. United States Dep't of Labor,* 694 F.2d 619 (9th Cir.1982); *Serrapica v. City of New York,* 708 F.Supp. 64 (S.D.N.Y.1989); *Davis v. Meese,* 692 F.Supp. 505, 517 (E.D.Pa.1988). The Department's witness, a specialist in the treatment of diabetes, concluded Miller's failure to follow proper self-care measures caused him to be unqualified to execute his duties as a firefighter. This testimony indicates that in Miller's case, his diabetes limited a major life activity and constitutes a disability.

The second inquiry concerns whether Miller proved he was qualified to retain his position. Although the issue was hotly disputed, the trial court found that Miller's job was not in jeopardy by reason of inefficiency and failure to perform his work. Instead, the court concluded Miller was discharged because he is a diabetic. The court indicated a person "who has diabetes and does not control it may well be unqualified" as a firefighter, but found that Miller

was not fired for this reason. The trial court did not address the issue of whether Miller proved he was qualified for the position.

Before we address this problem, we review the meaning of the word "qualified" because it is used in the elements of proof noted in *Hamer.* We have determined that "the 'unless based upon the nature of the occupation' language of section 601A.6 is 'akin to the bona fide occupational qualification exception present in the federal fair employment legislation.'" *Foods, Inc. v. Civil Rights Comm'n,* 318 N.W.2d 162, 168 (Iowa 1982).

■ In referring to the Federal Rehabilitation Act of 1973, 29 U.S.C.A. section 794, and its provisions for an impaired person who is "otherwise qualified," the Supreme Court defined "otherwise qualified person" as "one who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980, 988 (1979). We would define a qualified person as one who is able to meet all the employment requirements in spite of his or her disability. *See Doe v. Region 13 Mental Health–Mental Retardation Comm'n,* 704 F.2d 1402, 1410 (5th Cir.1983).

The federal cases place the burden of proving qualification on the party claiming discrimination. *Arenson v. Southern Univ. Law Center,* 911 F.2d 1124, 1127 (5th Cir.1990); *Fernandez v. Wynn Oil Co.,* 653 F.2d 1273, 1275 (9th Cir.1981). We have indicated "the nature of the occupation" is a defense to a prima facie case and placed the burden of going forward with the evidence on the employer. *Smith v. A.D.M. Feed Corp.,* 456 N.W.2d 378, 385 (Iowa 1990); *Frank v. American Freight Sys., Inc.,* 398 N.W.2d 797, 800 (Iowa 1987). Under our facts, the issue of proof was not raised and is inconsequential in our de novo factfinding.

We also note that there are legitimate requirements excluding diabetics from certain employments if the requirements are directly connected with and promote legitimate safety and job performance concerns.

*Serrapica,* 708 F.Supp. at 73 (diabetic who was not controlling his disease not qualified to operate heavy machinery such as a garbage truck); *Davis,* 692 F.Supp. at 517 (blanket exclusion of insulin dependent diabetics from applicants for special agents in FBI). In the present case, the Department did not have absolute rules concerning employment of diabetics, and we must turn to the evidence to determine Miller's qualification.

■ Although Miller presented evidence that he physically could do the work, we find the weight of the credible evidence was to the contrary. There was testimony that the National Fire Protection Association, an organization that develops and publishes standards for fire service, has determined that diabetes mellitus shall be a reason for rejection from the position of firefighter. The Department's medical expert, Dr. Hertko, testified that if a person's diabetes is not well-controlled he or she should not work as a firefighter. Dr. Hertko is a specialist in the treatment of diabetes and currently treats about 2,000 diabetics. We find credence in his testimony.

In addition, the Department presented evidence that a diabetic could not receive insulin or nourishment while wearing a self-contained breathing apparatus required in many fire situations. The window of opportunity in controlling aircraft fire is three to five minutes. The Department argues that if Miller were to have an insulin reaction during the course of an emergency he would risk his life, the lives of airplane passengers, and the lives of other firefighters.

We find the nature of a firefighter's duties justifies finding that Miller, a diabetic who is not in control of his disease, is not qualified for the firefighter position. This finding requires us to determine whether the Department can accommodate Miller.

■ In *Foods, Inc.,* we indicated an employer was under an obligation to "reasonably accommodate" a disabled person's condition. 318 N.W.2d at 169. This court has recognized that "an employer is not required to change the essential nature of the job in order to accommodate an employee; the employer is only obligated to rea-

sonably accommodate the employee's impairment based on the essential requirements of the job." *Henkel,* 471 N.W.2d at 811. Further, a "reasonable accommodation must be made by an employer only if it does not substantially impinge on the rights of other employees or incur more than de minimus costs to the employer." *Brown v. Hy–Vee Food Stores, Inc.,* 407 N.W.2d 598, 599 (Iowa 1987).

In *Foods, Inc.,* we determined an employer could have accommodated a cafeteria worker who had epilepsy. In that case, a cafeteria employee was terminated after having an epileptic seizure at work. The employer claimed that the nature of the work, which involved operating some potentially hazardous equipment, made accommodation of the employee impossible. We pointed out that working with potentially hazardous equipment comprised only a small portion of her job. Furthermore, the employer could have assigned other employees to the dangerous tasks to accommodate the employee's needs. *Id.* at 168–69.

■ We believe the nature of the work of a firefighter distinguishes this case from *Foods, Inc.,* and precludes accommodation. The duties of a firefighter are inherently dangerous. The Department requires its firefighters to meet a high standard of physical fitness in order for them to respond immediately and effectively to emergencies. It is critical that every firefighter be able to perform his or her duties at a moment's notice in such emergencies. Reinstatement of Miller is inconsistent with these safety concerns of the Department.

In summary, we hold that the Department did not discriminate against Miller on the basis of his disability. We reverse the trial court judgment to the contrary. On remand, the district court shall dismiss plaintiff's action and assess costs.

**REVERSED AND REMANDED WITH DIRECTION.**

LARSON, J., takes no part.