Jerry O. SMITH, Appellant,

v.

**DES MOINES CIVIL SERVICE COMMISSION and the City of Des Moines, Appellees.**

No. 95–1929.

Supreme Court of Iowa.

March 26, 1997.

Rehearing Denied April 18, 1997.

Charles E. Gribble and Pamela J. Prager of Gribble & Prager, P.C., Des Moines, for appellant.

Mark Godwin and Bruce E. Bergman, Des Moines, for appellees.

Considered by LARSON, P.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

CARTER, Justice.

The appellant, Jerry O. Smith, a captain on the Des Moines Fire Department, challenged his July 18, 1994 discharge by appeal to the Des Moines Civil Service Commission (the commission). The City of Des Moines (the city) challenged the authority of the commission to grant him relief for what the city maintained was a "nondisciplinary discharge" based on physical fitness requirements related to a cardiopulmonary test. We rejected that contention in *City of Des Moines v. Civil Service Commission*, 540 N.W.2d 52 (Iowa 1995). In the proceedings following that decision, the commission upheld Smith's discharge, and after hearing an appeal under Iowa Code section 400.27 (1993), the district court agreed with that determination. At issue on the present appeal is whether Smith was discharged in violation of Iowa Code section 400.18. After reviewing the record and considering the arguments of the parties, we reverse the judgment of the district court.

The National Fire Protection Association's standard on fire department occupational safety provides that each department "shall adopt and maintain a respiratory protection program that meets the requirements of the American National Standards Institute (ANSI)." ANSI standard Z88.5–1981, section 3.3, provides that fire fighters shall not use a self-contained breathing apparatus (SCBA) until "it has been determined that he or she has been able to perform while using the device." In order to make that determination, the standard mandates periodic physical examinations. Standard Z88.6–1984 states that spirometry tests should be used to screen individuals for SCBA use. A spirometry test measures the amount of air a person can exhale at a given time. It is a measure of pulmonary fitness. The ANSI standard further provides that physicians should consider a maximum exercise stress test for those persons using SCBA equipment. The latter test measures the volume of oxygen taken into the blood stream at maximum aerobic exertion.

With an eye toward meeting these standards, fire chief Robert Armstrong sometime in 1988 consulted with Dr. Steven K. Zorn, a physician and pulmonary specialist, concerning the institution of exercise stress testing for fire fighters at the rank of captain and below. Of particular concern was pulmonary function testing of those persons required to wear an SCBA in the performance of their duties. Dr. Zorn recommended that all incumbent fire fighters should be required to take an annual physical in which they are given the spirometry test. Those scoring less than a specified score on that test would also be required to take the maximum exercise stress test. In Dr. Zorn's view all incoming fire fighters would be required to take the maximum exercise stress test and achieve a minimum score of 37 ml/kg/min. All incumbent fire fighters who did not satisfy the minimum spirometry test requirement must attain a score of 33.5 ml/kg/min on the maximum exercise stress test. The required level of attainment on these tests was recommended by Dr. Zorn based on an article by Mark Sothmann, Ph.D., that discusses a study performed on fire fighters in full gear and wearing SCBAs in the performance of fire suppression tasks under simulated firefighting conditions. The Sothmann article cautions that the maximum exercise stress test standards must be job related. It further notes that a large number of fire fighters over the age of forty (an estimated eighty-three percent) will not be able to meet this standard.

Smith first took the spirometry test in 1988 and failed to meet the minimum standard that Dr. Zorn had developed for that procedure. A short time later he passed the spirometry test but failed the maximum exercise stress test. A few days later the spirometry test was again administered and Smith attained the minimum requirement level. He was then certified to wear an SCBA, although he had failed to meet Dr. Zorn's standard in the only maximum exercise stress test that he had taken. Smith again passed the spirometry test in 1989, 1990, and 1991 and was not required to take a maximum exercise stress test in those years.

In 1992 Smith failed to meet Dr. Zorn's minimum standard on the spirometry test given at the fire department. He repeated the test in Dr. Zorn's office and passed it.

Notwithstanding that fact, Dr. Zorn also administered a maximum exercise stress test. Smith attained a level of 22.2 ml/kg/min that was well below the 33.5 ml/kg/min standard that had been selected by Dr. Zorn. As a consequence of this test result, the fire chief took Smith off active duty and placed him on sick leave. In January 1993 Smith again failed to attain Dr. Zorn's minimum performance level on the maximum exercise stress test. At this time Smith was independently evaluated by Dr. John Glazier, who concluded that Smith was physically fit to perform fire-fighting duties. On April 28, 1993, the acting fire chief wrote Dr. Glazier stating: "I need something in writing from you that states [Smith] can wear [an SCBA] and may return to work." On May 10, 1993, Dr. Glazier wrote a letter to the Des Moines Fire Department approving Smith for exertional fire-fighting tasks while wearing an SCBA. Notwithstanding that letter, the acting fire chief declined to return Smith to work.

During the time that Smith was not working, application was made on his behalf for a disability retirement benefit under Iowa Code chapter 411. On October 27, 1993, that application was denied, pursuant to an examination of Smith by three physicians at the University of Iowa Hospitals and Clinics. All three of these physicians pronounced Smith fit to return to work as a fire fighter. In commenting on the denial of Smith's application for disability retirement, Dr. Zorn took the position that there is a difference between disability and fitness for fire suppression duty. The record is clear, however, that Dr. Schwartz, Dr. Mosely, and Dr. Fuortes, who made the disability determination, couched their opinions concerning Smith's fitness in terms of fitness for active fire-fighting duty, including wearing an SCBA. Dr. Glazier's opinion was similarly so couched. In a letter to the city, Dr. Schwartz expressed the view that Smith's exercise capacity was 110% of that predicted for his age and size. Before the civil service commission Dr. Schwartz testified: "If he's unfit to work as a fire fighter, then no one over fifty years of age is fit to work as a fire fighter."

On November 4, 1993, the chief of the fire department advised Smith that he had until November 19 to retire. Later this was extended until July 1, 1994. When Smith declined to retire prior to that date, he was given a notice of termination effective July 18, 1994. Other facts relevant to deciding this appeal will be considered in connection with our discussion of the legal issues that are presented.

### I. Scope of Review.

■■■ Appeals from a civil service commission decision are tried de novo in the district court. Iowa Code § 400.27 (1993). The district court "shall try the case anew and give no weight or presumption of regularity to the findings of the Commission." *Sieg v. Civil Serv. Comm'n,* 342 N.W.2d 824, 828 (Iowa 1983). On appeal from the district court, this court also reviews de novo. *Mahaffey v. Civil Serv. Comm'n,* 350 N.W.2d 184, 185 (Iowa 1984). Throughout the trial court and appellate court proceedings, the commission has the burden of showing that the discharge was statutorily permissible. *Johnson v. Civil Serv. Comm'n,* 352 N.W.2d 252, 257 (Iowa 1984).

### II. The Civil Service Statutes.

Iowa Code section 400.18 reads:

No person holding civil service rights as provided in this chapter shall be removed, demoted, or suspended arbitrarily, except as otherwise provided in this chapter, but may be removed, demoted, or suspended after a hearing by a majority vote of the civil service commission, for neglect of duty, disobedience, misconduct, or failure to properly perform the person's duties.

Our characterization of the nature of Smith's discharge in connection with the prior appeal, *City of Des Moines v. Civil Serv. Comm'n,* 540 N.W.2d at 56–57, was a "nondisciplinary discharge." That conclusion was for purposes of the city's argument that section 400.18 limited the commission's jurisdiction for reviewing public employee discharges to disciplinary matters. We rejected that conclusion.

■■■ What we did not decide in the prior appeal but now believe to be the case is that

section 400.18 establishes by express language a civil service review of discharges based on failure to properly perform the person's duties. In considering the reasons that prompted the city to discharge Smith, we are convinced that they implicate his ability to properly perform his duties. Although the statute uses the language "failure to properly perform the person's duties," we believe a reasonable interpretation of that language would authorize a discharge based on future inability to adequately or safely perform one's duties as a result of an existing medical or physical condition. This leads directly to an accompanying conclusion that a discharge based on this premise may be challenged by a section 400.27 appeal, and the burden is on the public employer to establish that the employee is in fact not able to adequately or safely perform the requirements of the employee's job.

 The city urges that our decision in *Hollinrake v. Iowa Law Enforcement Academy,* 452 N.W.2d 598, 603 (Iowa 1990), authorizes employment decisions based on standardized fitness requirements and that individualized assessments are not required. The *Hollinrake* decision involved standardized, uncorrected vision requirements for acceptance by the Iowa Law Enforcement Academy. Completion of the course provided by the academy was a requirement for Hollinrake's continued employment as a deputy sheriff. At issue in the appeal was the validity of the police academy entrance requirements that had been established by administrative rule under chapter 17A. That was primarily an issue affecting new applicants for law enforcement positions and thus did not implicate civil service discharge requirements. Although in Hollinrake's situation continued employment was involved rather than new employment, no issue was presented concerning the civil service implications of the requirement for academy certification. If that issue had been raised, Hollinrake's rights, as a county employee, would have been subject to an entirely different statutory scheme than that affecting municipal employees such as Smith. *See Haberer v. Woodbury County,* 560 N.W.2d 571, 578 (Iowa 1997).

We did discuss in *Hollinrake,* as an issue of administrative law, whether a determination of physical performance ability, based on standardized requirements, is arbitrary in the absence of an individualized determination based on evidence adduced at a hearing. In considering that issue, we concluded that standardized requirements may be a conclusive basis for decision making if the accuracy of the facts giving rise to the standardized requirements have been fairly tested by a rule-making process in which interested parties or entities are allowed to participate. *Hollinrake,* 452 N.W.2d at 603.

In *Miller v. Sioux Gateway Fire Department,* 497 N.W.2d 838 (Iowa 1993), a disability discrimination case under Iowa Code section 601A.6 (presently codified as section 216.6), we again considered the issue of standardized rules for determining physical fitness requirements for public employment. The plaintiff in *Miller* was a fire fighter who was afflicted with diabetes mellitus. In considering his disability discrimination claim, we discussed the standards that had been developed by the National Fire Protection Association, an organization that develops physical fitness requirements for fire fighters. Those standards would have barred all persons afflicted with diabetes mellitus from employment as fire fighters. We noted, however, that the public employer involved in the *Miller* case had not adopted "absolute rules" concerning the employment of diabetics. Consequently, we concluded that the issue must be decided on an ad hoc basis based on the totality of medical evidence presented. *Id.* at 842.

Smith maintains that, as was the situation in the *Miller* case, the city has never formalized Dr. Zorn's minimum cardiopulmonary performance on the maximum exercise stress test as a standardized requirement. Consequently, he urges that the issue of his fitness must be decided on the totality of the evidence presented at the hearing, including the views of Dr. Schwartz, Dr. Mosely, Dr. Fuortes, and Dr. Glazier.

In the alternative, Smith argues that the minimum cardiopulmonary performance level applied by Dr. Zorn is arbitrary because (1) the studies on which it is based show that

forty percent of the fire fighters that scored less than 33.5 ml/kg/min on the maximum exercise stress test *were* physically capable of performing fire suppression tasks under simulated fire-fighting conditions while wearing an SCBA, and (2) application of this standard will eliminate eighty-three percent of fire fighters over the age of forty. He also argues that the standard has been arbitrarily applied by the appointing authority in the Des Moines Fire Department so as to not be uniformly applied to similarly situated persons.

In considering the arguments presented by both sides on this issue, we are convinced that the 33.5 ml/kg/min cardiopulmonary performance standard that was used as the basis for Smith's discharge represents the considered medical judgment of Dr. Zorn, the physician retained by the city to make physical fitness evaluations of its fire fighters. No evidence has been presented, however, that Dr. Zorn's conclusions have ever been formally adopted by the city as a standardized personnel policy to be applied in lieu of individual determinations. Our decision in *Bryan v. City of Des Moines*, 261 N.W.2d 685 (Iowa 1978), suggests that authority to establish that type of controlling standard lies in the city council. *Id.* at 687–88. There is nothing to suggest any council consideration of this significant personnel policy matter in the present case. There is not even any suggestion of formal action by the chief of the fire department as the appointing authority under section 400.15. The only evidence received concerning the source of the policy that the city applied to Smith is a document reproduced on the stationery of the professional corporation with which Dr. Zorn is associated. Absent some formal procedure for adoption of the Zorn standards by the city, we cannot conclude that those requirements have been tested by a rule-making process so as to preclude individualized determination of the issue. We are thus forced to conclude that the situation presented must be treated in the manner that was utilized in the *Miller* case, *i.e.*, by considering the totality of the evidence presented on the issue.

The city was certainly acting in a normal and reasonable manner in basing its judgments in this personnel matter on the views of the expert that it had hired for physical fitness examinations of fire fighters. On the other hand, an adversely affected employee such as Smith is entitled to challenge the factual basis for the conclusions of the city's expert in a civil service commission appeal under section 400.27. As we have previously noted, our review of the commission's conclusions in this type of case is conducted without giving weight or presumption of regularity to the findings of the commission. Reviewing the record in that manner and considering the totality of the evidence presented, we are persuaded by the opinions of the four doctors who disagreed with Dr. Zorn's conclusions that Smith has been shown to be physically capable of performing fire suppression duties while wearing an SCBA. This finding makes the city's reasons for discharging Smith inadequate under section 400.18. Consequently, we reverse the judgment of the district court and remand the matter to that court for an order reinstating Smith to the position he held prior to his July 18, 1994 discharge.

### III. *Entitlement to Back Pay.*

In arguing for a back-pay award in the district court, Smith presented a factually complex issue concerning entitlement to back pay in lieu of sick leave exhaustion prior to his July 18, 1994 discharge. Because the district court found that the discharge had been proper, it did not reach this issue.

Although we are convinced that on reinstatement Smith is entitled to back pay for the period subsequent to July 18, 1994, we believe the district court, on remand, is better suited to decide whether he is also entitled to a retroactive adjustment of his sick leave exhaustion based on back-pay entitlement prior to that date.

We have considered all issues presented and conclude that the judgment of the district court must be reversed. The case is remanded to that court for an order directing Smith's reinstatement and for other appro-

priate orders that may be required consistent with this opinion.

**REVERSED AND REMANDED.**